UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-539-H

THE IRON QUARTER, LLC                                                        PLAINTIFF

V.

JIM MIMS, et al.                                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

The Iron Quarter LLC ("Iron Quarter") brought suit in Jefferson County Circuit Court against Jim Mims and Louisville-Jefferson County Metro Government ("Defendants," or "Metro") contesting the denial of its request to demolish seven separate but contiguous structures located between 105 and 119 West Main Street in Louisville (the "Property"). The lawsuit appealed the denial of its administrative requests, asserted promissory estoppel, and denial of equal protection and due process under the United States and Kentucky Constitutions. It requested declaratory and injunctive relief as well as a writ of mandamus.

On August 13, 2010, shortly before a scheduled hearing for injunctive relief in state court, Defendants removed to this Court based on its original jurisdiction under 28 U.S.C. § 1331. Iron Quarter once again requested an immediate hearing, which this Court accommodated. This Court held a preliminary conference, entered a brief discovery schedule and set a hearing where Defendants questioned whether Iron Quarter had exhausted its administrative remedies before filing this action. After Iron Quarter requested an opportunity to brief the issue, Defendants moved to dismiss on the grounds that this Court lacks jurisdiction because Iron Quarter has not exhausted its administrative appeals process. *See Popplewell's Alligator Dock*

*No. 1, Inc. v. Revenue Cabinet,* 133 S.W.3d 456, N 66 (Ky. 2004) (citing *Commonwealth v. DLX, Inc.,* 42 S.W.3d 624, 625 (2001)).

This Court thoroughly considered all of the issues and supplied the parties with a draft opinion setting forth its views. The Court invited the parties to discuss their responses to the draft and conducted an extensive conference for that purpose. The opinion that follows represents the Court's considered judgment from all of these efforts.

I.

This lawsuit focuses upon the Property which comprises an area known as Whiskey Row, or the Iron Quarter, located on the 100 block of West Main Street in downtown Louisville. The buildings along this block were designed and constructed between 1857 and 1905, and together represent some of Louisville's finest examples of Renaissance Revival, Beaux Arts, and Chicago-style architecture.

Originally, the buildings served as warehouses and offices for whiskey merchants, hardware dealers and commodity dealers. Over the years their uses evolved. Unfortunately, during the last thirty years many of the buildings have remained essentially unoccupied. It is fair to say that over the years, the buildings have not received all the necessary maintenance and have fallen into considerable disrepair. Indeed, in May 2001, the structure located at 101-103 West Main collapsed.

On February 5, 2007, Iron Quarter purchased the Property envisioning a mixed use development that would maintain the facades of the original structures, but demolish the rest of the buildings. Due to the economic downturn, work could not proceed as planned.

At some point all involved recognized the deteriorating condition of the Property.

2

Consequently, the Downtown Development Corporation enlisted Tetra Tech to inspect the Property. Its report, dated January 27, 2010, concluded that the buildings were at some risk of collapse and suggested certain repair options. Acting upon this report, on March 19, 2010, Robert Kirchdorfer, the Assistant Director of the Metro Department of Codes and Enforcement (the "Department"), wrote Todd Blue, the managing partner of Iron Quarter, ordering him to immediately stabilize the Property. The order set forth specific dates for the development of plans, the initiation of work and its completion. The letter stated that failure to comply would subject Iron Quarter to legal action as provided in Chapter 156 of the Property Maintenance Code.

In response, Iron Quarter commissioned structural engineer Steve Leonard to investigate the Property. Leonard reported that the Property was at risk of collapse and a danger to the public's safety. Acting on this information, on April 27, 2010, Iron Quarter requested that the Director of the Department of Inspections, Permits & Licenses issue an "emergency order of demolition" pursuant to Metro Ordinances § 150.006 (the "Wrecking Ordinance"), 156.807 and 150.110. Apparently in response, on April 29, 2010, the Department faxed Plaintiff's wrecking contractor instructions for applications for wrecking permits.

At Metro's instruction, on May 12, 2010, Iron Quarter repeated the request for demolition under Louisville/Jefferson County Metro Government Code of Ordinances ("LMCO") §156.807 and §150.110(C), but also included individual wrecking permit applications for each building. More specifically, the letter renewed Iron Quarter's "request for an immediate order of demolition for the buildings for the reason the buildings are in immediate danger of collapse pursuant to the authority granted to you in Louisville Metro Ordinances §

3

156.807 and § 150.110(c)." In a letter dated May 14, Kirchdorfer denied Iron Quarter's "request for an emergency demolition order." The letter also stated that "with the current ordered safeguards in place to protect the public, along with the time frame given to your client, Mr. Blue, to stabilize the structures, we do not feel the buildings pose an imminent damage."

At this Court's hearing, Defendants explained that LMCO §156.806 concerns emergency demolition orders ("EDO") while LMCO §156.807 applies to regular, non-emergent demolition. Defendants assert that its May 14 letter denied of Iron Quarter's EDO under §156.806, and amounted to an instruction that Iron Quarter get a wrecking permit, essentially granting the §156.807 demolition request. Understandably, Iron Quarter did not perceive Metro's May 14th response as some sort of approval. After the May 14th letter, Iron Quarter obtained further reports about the condition of the Property. Another structural engineer and a fire expert concurred that the buildings were a danger to public safety.

Subsequently, several other experts inspected the Property. On May 26, 2010, Joseph Zena, a structural engineer, visited the site to evaluate the buildings' structural integrity. In a report dated June 24, 2010, he concluded that the buildings were "unsafe and at risk of collapse." On June 7, 2010, Eugene West, a fire expert, evaluated the site and later concluded that the buildings were a danger to the public at large and to any firefighter required to respond to potential fire in them. On June 25, 2010, Iron Quarter filed this lawsuit in Jefferson Circuit Court.

Meanwhile on June 28, 2010, the Historic Landmarks and Preservation Districts Commission designated each building a local landmark; the buildings were associated with the whiskey industry and have iron facades. The buildings are also designated within the Waterfront

Review Overlay District. In order to obtain a non-emergency demolition order, both of these entities must approve the demolition plans within the wrecking permit process.

Since May 14, Iron Quarter has made repeated requests for an EDO, the most recent being October 12, 2010. The only response to these requests has been the Metro's instruction that Iron Quarter follow the standard wrecking permit process. Meanwhile, Metro has initiated criminal proceedings against the registered agent of Iron Quarter because of safety concerns arising out of the condition of his buildings.[1]

II.

Before tackling any of the jurisdictional issues, the Court must make some preliminary sense of the Metro ordinances that might govern the obligations and responsibilities of the parties to this dispute. This is no simple task. The ordinances seem to provide at least two different routes under which demolition might proceed.

A.

The first route is under LMCO §156.807, which states that "[t]he Code Official shall order the owner of premises upon which is located any structure or part thereof, which in the Code Official's judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human habitation or occupancy, and to demolish . . . or . . . repair . . . at the owner's option. . ." This ordinance also clearly provides for a direct appeal to court: "Anyone affected by such order may, after service of such order apply to Jefferson County Circuit Court for an order restraining the Code Official from razing such structure or parts thereof."

---

[1] Defendants have agreed to not take any action on the criminal proceeding against the registered agent of Iron Quarter that is pending in state court while this matter is before this Court.

Metro says that proper procedure under LMCO §156.807 would be, after the code official has ordered demolition, or in this case Metro has granted permission to demolish, to obtain a wrecking permit. Iron Quarter disagrees that a full wrecking permit process is required under this ordinance and argues that Metro's past practices support their position. Regardless, in the case of a structure more than 65 years old, a full wrecking permit process requires approval of the Landmarks and Historic Preservation Commission ("Landmarks"). Furthermore, since the Property is located in the Waterfront Overlay District, approval of the Waterfront Review Overlay Commission is required to obtain a wrecking permit. However, LMCO §150.110(C) provides an exception to these approvals for buildings that have been ordered demolished "for the purpose of remedying conditions determined to be dangerous to life, health or property." A court can issue this order. LMCO § 150.110(C).

Here, Iron Quarter made a written request for demolition under LMCO's §§156.807 and 150.110(C). Defendants denied the request under LMCO §156.806. Defendants now claim that they actually granted the request under LMCO §156.807 by telling Iron Quarter to seek wrecking permits. This Court finds no remotely logical inference of such a construction. Metro either failed to answer the §§156.807/150.110(C) request or never clearly or formally responded at all.[2] At some point a plaintiff cannot be held to exhaust administrative remedies when there is no response to their claim. *See Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir. 2005) (agreeing with the Eighth and Fifth Circuits that, in the context of the Prison Litigation Reform Act, a

---

[2] The parties have also characterized LMCO 150.110(C) as an ordinance covering emergency demolition orders since Landmarks approval is not required for demolition under this section. Therefore, the City's written denial could be construed as a denial under this section also. Even if the May 14th letter did deny demolition under Section 150.110(C), Iron Quarter has made repeated requests for an EDO after May 14, 2010 to which there was no response.

plaintiff has exhausted administrative remedies if the prison official does not respond to the prisoner's grievance). The application of such a rule in our circumstances seems most appropriate.

Regardless of one's analysis, Iron Quarter appears to have pursued its proper statutory remedy by filing an action in Jefferson County Circuit Court to compel the government to order demolition of their buildings because they are "so old, dilapidated or . . . dangerous, unsafe, unsanitary or otherwise unfit for human habitation." LMCO §156.807(A).

## B.

The other route to demolition is found in LMCO §156.806, which grants discretion in the Code Official to order repair or demolition when "there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure . . . ." This section provides for a post-deprivation hearing if the individual "to whom such order [was] directed" petitions the Code Official or his or her authorized representative.

Though Iron Quarter's written request did not reference this section; confusingly, Metro's denial did so. Consequently, Metro claims that Iron Quarter should have appealed this denial to the Code Enforcement Board ("CEB") under LMCO §156.808. However, Iron Quarter claims to have made repeated requests for an EDO following the May 14th letter. Defendant did not formally respond to these later requests. There is nothing in the statutory scheme to prevent Iron Quarter from making these repeated requests for an EDO. Once again, Iron Quarter cannot be compelled to exhaust administrative remedies if no decision is issued. *See Brengettcy,* 423 F.3d at 682.

7

Therefore, the Court concludes that under the circumstances of its requests for demolition, Iron Quarter either (1) properly appealed the denial of its request under LMCO § 156.807 or (2) was not required to exhaust administrative remedies. Either way, Metro's motion to dismiss on those grounds must be denied.

III.

Although no party has moved to remand, the Court is always concerned to properly exercise its own jurisdiction.

All of Iron Quarter's claims, both state an federal, arise from its interactions with Metro and Iron Quarter's attempt to obtain a demolition order. The Court has original jurisdiction over the federal due process and equal protection claims and supplemental jurisdiction over the state law claims since they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution." 28 U.S.C. § 1367 (2006); *also see City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 159 (1997) (finding "a lawsuit filed in the Circuit Court of Cook County seeking judicial review of decisions of the Chicago Landmarks Commission may be removed to federal district court, where the case contains both federal constitutional and state administrative challenges to the Commission's decisions."). Unquestionably therefore, Metro properly removed to federal court.

The exercise of supplemental jurisdiction is, however, ultimately discretionary. *Gamel v. City of Cincinnati,* 2010 WL 4398540, at *2 (6th Cir. 2010). Courts should consider "judicial economy, convenience, fairness, and comity," and may also consider if "the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case." *Gamel,* at *2

(quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 and 357 (1988)). None of these factors weigh heavily in favor of remand. It is more convenient for the parties and judicial economy generally for the case to remain here. Defendants removed to federal court and Plaintiff now does not object to the exercise of federal jurisdiction.

The predominant issue in this case is whether Metro has complied with its own ordinances and has fairly applied the standard for demolition. The Court has carefully considered the advisability of remanding the state law issues to Jefferson Circuit Court. In the end, however, the Court is persuaded that its familiarity with the issues and the presence of the case here suggests that adjudication here is both more agreeable and convenient for both parties.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED.

IT IS FURTHER ORDERED that the Court will set a hearing to resolve the state law issues on Plaintiff's appeal and the federal due process issues.

cc: Counsel of Record