UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

THE IRON QUARTER, LLC             )
                                           )
              Plaintiff        )
                                           )
v.                                      )     No. 3:10-CV-00539-JGH
                                         )
JIM MIMS, et al.                )
                                         )
            Defendants    )
_____ )

**MEMORANDUM IN SUPPORT OF**
**MOTION TO INTERVENE AS DEFENDANTS**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, DKH Properties, Inc., Louisville Historical League, Inc., Neighborhood Planning and Preservation, Inc., Open Louisville, Inc., and Preservation Louisville, Inc., (collectively, "Movants") submit this memorandum in support of their motion to intervene.

**I. INTRODUCTION**

The pending litigation concerns claims by The Iron Quarter, LLC ("Owner"), the owner of seven historic commercial buildings located in the 100 block of West Main Street, Louisville, Kentucky, against Louisville Metro Government and certain local agencies (hereinafter "the City").  Owner seeks relief necessary to proceed with demolition of the buildings which have been designated as local landmarks pursuant to local ordinance.  Owner alleges that the City, in denying Owner's requests for emergency demolition orders, has denied Owner due process and equal protection in violation of the 5th and 14th Amendments to the United States Constitution and Section 2 of the Kentucky Constitution.  Owner further claims that the City is estopped from preventing demolition of the buildings, that Owner is entitled

to a mandamus commanding the City to investigate and take action with respect to the buildings, and that Owner should be granted declaratory and injunctive relief requiring the City to issue emergency demolition orders for the buildings.

Movants are one of the owners of the building at 121 West Main Street, Louisville, Kentucky, located immediately adjacent to the buildings which Owner seeks to demolish, and certain non-profit corporations, located in Louisville, Kentucky, which are dedicated to promoting historic preservation, environmental stewardship, protection and revitalization of neighborhoods and the local community, and transparency and public participation in local government.  Movants seek to intervene as defendants in this litigation in order to protect their interests and the interests of their members and the citizens of Louisville, Kentucky.

Movants seek intervention for the limited purpose of:  (1) ensuring that any action by the City and Owner will not harm the interests of the owner of the property located at 121 West Main Street ;  (2) defending the City's original  determination not to issue emergency demolition orders for Owner's buildings on the grounds that the City had a rational basis for determining that the buildings do not pose an imminent danger to public safety; (3) arranging for an expert structural engineer to inspect Owner's buildings, including facades, and render an opinion on their current structural condition; and (4) establishing through an evidentiary hearing that the Agreed Judgment entered by the parties violates applicable law and fails to serve the public interest because the buildings do not pose an imminent danger to public safety and therefore fall within the Louisville/Jefferson County Metro Code of Ordinances Chapter 32 ("Landmarks Ordinance") prohibition on demolition of designated local landmarks without a finding of economic hardship by the Historic Landmarks and Preservation Districts Commission ("Landmarks Commission") and are subject to the requirement for approval of the Waterfront Review Overlay District.

## II. FACTUAL BACKGROUND

The 100 block of West Main Street is known as "Whiskey Row" because the buildings on the block historically housed a variety of distillers, wholesalers, and other whiskey-related businesses.   The buildings date from as early as the 1850's and are among the most significant examples of Renaissance Revival, Beaux Arts, and Chicago-style architecture in Louisville.   Historic Local Landmark Designation Report dated June 28, 2010 attached as Exhibit 1.   Some buildings on the block have been substantially rehabilitated including Whiskey Row Lofts located at 127-131 West Main Street and the Patrick O'Shea's building located at 123 West Main Street.   Affidavit of Henry Doogarsingh attached as Exhibit 6.   The building located at 121 West Main Street is currently being rehabilitated.   Doogarsingh Affidavit, Exhibit 6.   On February 5, 2007, The Iron Quarter, LLC purchased seven properties located at 105, 107-109, 111, 113, 115, 117, and 119 West Main Street.   Amended Complaint, paragraph 14.   In March 2007, Owner announced plans to develop the properties as a mixed use office-commercial development called "the Iron Quarter," with Humana, Inc. to serve as the anchor tenant for the project.   Amended Complaint, paragraph 17.   The proposed "Iron Quarter" project was subsequently terminated when Humana decided against leasing space in the planned development.   Amended Complaint, paragraph 20.   Owner has subsequently made general statements about its intention to pursue development of a mixed use commercial-hotel development on the block, but Owner has never publicly announced any specific proposal.   Affidavit of Marianne Zickuhr attached as Exhibit 2.

Upon information and belief, since purchasing the buildings in 2007, Owner has failed to undertake regular maintenance and repairs necessary to keep the buildings in good condition.   Structural Stability Assessment, Tetra Tech, January 27, 2010, attached as exhibit to Amended Complaint.   A structural assessment of the buildings conducted on behalf of the Downtown Development Corp. found the buildings in various states of deterioration, but concluded that "the buildings could possibly be salvaged." Structural Stability Assessment, p. 2.

On April 27, 2010, Owner contacted the City's Department of Inspections, Permits, and Licenses, contending that the buildings were in imminent danger of collapse and requesting emergency demolition orders.  Amended Complaint, paragraphs 31, 32.  By letter dated May 14, 2010, the City denied the request, stating "with the current ordered safeguards in place to protect the public …we do not believe the buildings pose an imminent danger."  Amended Complaint, paragraph 34.   The safeguards that were implemented include security fencing and cover structures to protect the public sidewalk.  Zickuhr Affidavit, Exhibit 2.  However, the City subsequently initiated criminal proceedings against Owner due to safety concerns arising out of the condition of the buildings.  Memorandum Opinion and Order, January 12, 2011.

Upon disclosure of Owner's requests to demolish the buildings in May 2010, Movants held a number of meetings attended by their members and the general public to discuss public concerns about the potential demolition of these important historic buildings located on a highly visible downtown block.  Zickuhr Affidavit, Exhibit 2.  Movants determined to pursue designation of the Whiskey Row buildings as local landmarks under City Ordinance Section 32.260 and support a determination on the pending application for listing on the National Register of Historic Places.  Zickuhr Affidavit, Exhibit 2. Movants circulated petitions in an effort to gather the 200 signatures required for an application for "landmark" status, ultimately submitting petitions with in excess of 1,300 names.  Zickuhr Affidavit, Exhibit 2.  Movants, through local fundraising efforts and a grant from the National Trust for Historic Preservation, raised funds for the $4,000 in application fees necessary to apply for landmark designation for eight buildings on the block ($500 per building).   Zickuhr Affidavit, Exhibit 2.  The applications, with far more than the necessary signatures and with the appropriate fees, were submitted to the Landmarks Commission by Movant, Preservation Louisville, Inc. on behalf of the other Movants and the signatories to the petitions.  Movants attended the June 28, 2010 public hearing convened by the Landmarks Commission and presented witnesses who testified about the historic, architectural, and cultural significance of the buildings and the importance of landmark designation to their preservation.  Zickuhr

Affidavit, Exhibit 2.  Owner also presented testimony at the public hearing in opposition to designation of his properties as local landmarks.  Zickuhr Affidavit, Exhibit 2.  After considering the testimony presented at the public hearing, the Landmarks Commission voted to designate each of the buildings as a local landmark.  Amended Complaint, paragraph 49.  In addition, on June 4, 2010, the buildings on the 100 block of West Main Street were included on the National Register of Historic Places as part of the "Whiskey Row Historic District," with the consent of the majority of property owners on the block. Zickuhr Affidavit Exhibit 2.

Under Metro Ordinance Section 32.256 a Certificate of Appropriateness must be obtained from the Landmarks Commission before any exterior alteration, including demolition, can be made to a building designated as a local landmark.  An owner can obtain approval for demolition of a landmarked building if the owner can demonstrate economic hardship under Metro Ordinance Section 32.257(L). However, in the case of a building that poses an imminent danger to public safety, Metro Ordinance Section 156.807 provides that the City may order action including demolition, without notice or hearing. In the present case, upon denial of his request for emergency demolition orders, Owner failed and refused to apply for a Certificate of Appropriateness for demolition of the buildings based on economic hardship. Instead, on July 7, 2010, Owner filed the present lawsuit in Jefferson Circuit Court, which lawsuit was subsequently removed to federal court.

In the pending litigation, the City defended its prior determination to deny Owner's request for emergency demolition orders for the buildings.  Movants first learned that the City had determined to change its position and agree to issue demolition orders when the settlement with Owner was publicly announced on January 31, 2011. Zickuhr Affidavit, Exhibit 2.  The Agreed Judgment requires the City to issue emergency demolition orders and consult with the Owner for a period up to 90 days regarding the feasibility of preserving only the Main Street facades, but not the Washington Street facades which are also protected by the landmark designation, nor the remaining structure of the buildings.  In addition, the City announced that $450,000 in public funds would be potentially available to Owner.  Zickuhr

Affidavit, Exhibit 2. If the parties are unable to reach agreement within the 90 day period, Owner may elect, in its sole discretion, to demolish the buildings and use the location as a surface parking lot for a period of up to five years. Agreed Judgment, paragraph 1. The Agreed Judgment, entered by the court on February 7, 2010, clarifies that it is "not a final and appealable judgment" and provides that the case shall remain pending before the court until demolition of the buildings and installation of a surface parking lot. Agreed Judgment, paragraph 3.

### III. THE AGREED JUDGMENT VIOLATES APPLICABLE LAW
### AND FAILS TO SERVE THE PUBLIC INTEREST

Under the prior Mayor's Administration, the City defended its determination to deny Owner's request for emergency demolition permits. The current Mayor took office on January 3, 2011 and commenced negotiations with Owner. Without undertaking any additional structural assessments of the Whiskey Row buildings and in direct contravention of the City's previous determination that the buildings do not pose an imminent danger, the new Mayor announced the Agreed Judgment, less than 30 days after he took office, that provides for issuance of the emergency demolition orders for the buildings. The negotiated settlement allows Owner to avoid making any demonstration of economic hardship to the Landmarks Commission as required by the Landmarks Ordinance. Indeed, not only were the Landmarks Commission and the Waterfront Review Overlay District excluded from the settlement negotiations resulting in the City's commitment to issue demolition permits, despite requirements for their approval under local ordinance, but they have also apparently been excluded from the ongoing negotiations with Owner for preservation of the building facades. Agreed Judgment, paragraph 1. Despite the substantial public interest in protecting the Whiskey Row buildings, the Mayor negotiated the Agreed Judgment without any input from the general public and bypassed applicable ordinances that would have ensured public participation. The Agreed Judgment provides for a 90-day negotiating period before Owner is authorized to proceed with demolition of the buildings. The negotiating period is long enough to dispel any notion that the parties actually contemplate an <u>imminent</u> danger from the buildings, while short

enough to foreclose identification of other economically viable alternatives to demolition.  There are ongoing efforts by private individuals to structure a transaction that would involve purchase of the Whiskey Row properties from Owner, but these efforts are likely to be frustrated by the expiration of the 90-day negotiating period and the expedited demolition of the buildings by Owner.  Zickuhr Affidavit, Exhibit 2.  The City's action in this case raises the prospect that any other "landmarked" building may be demolished in the future through circumvention of the applicable process under the Landmarks Ordinance.  The City relied upon a rational and robust process in denying Owner's request for a demolition permit for the Whiskey Row buildings.  In the absence of additional structural assessments supporting the City's changed determination, not only is the City's original determination valid and fully defensible, but its subsequent determination is legally insufficient and contrary to the public interest.

In addition, the Agreed Judgment authorizes Owner, "in its sole discretion" to proceed with demolition of the buildings upon expiration of the 90-day negotiating period.  This discretionary authority which the Agreed Judgment purports to confer upon Owner allows Owner to decide to demolish the buildings – or apparently decide against it.   The Agreed Judgment allows Owner to demolish the buildings in their entirety or possibly preserve their facades and demolish the remainder of the buildings. After reversing its previous determination that the buildings do not pose an imminent danger, the City now leaves it entirely within the discretion of Owner to decide whether and how to abate the purported imminent danger to public safety.   It is well established that governmental bodies may not alienate, surrender, or abridge their powers or duties nor confer them upon entities not authorized to exercise such powers or duties.  73 C.J.S., *Public Administrative Law and Procedure*, Section 56.  The City may not enter into an agreement which authorizes surrender of its police powers and delegation of those powers to a private party.  "A municipal corporation or other corporate political entity created by state law, to which police power has been delegated, may not divest itself of such power by contract or otherwise." *G. Curtis Martin Investment Trust v. Clay*, 266 S.E.2d 82, 85 (S.C. 1980).  In the present case, it is simply

impermissible for the City to abdicate its authority and leave a resolution of this matter in the hands of a private party which will serve its own interests, rather than those of the public.

When considering approval of a proposed consent decree, the courts evaluate "whether the decree is 'fair, adequate, and reasonable, as well as consistent with the public interest.'" *U.S. v. Lexington-Fayette Urban County Gov't*, 591 F.3d 484, 489 (6th Cir. 2010), quoting *U.S. v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986). "[T]he standard of fairness, reasonableness and consistency with the statues is [the Sixth Circuit's] general test for consent decrees. *U.S. v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991). If an evidentiary hearing establishes that the City has agreed to demolition of the buildings in violation of applicable laws, the standards that govern review of governmental agency settlements dictate that the Agreed Judgment should be vacated. The public interest strongly favors intervention by Movants in order to facilitate a vigorous hearing to determine whether demolition of the Whiskey Row buildings is permissible.


## IV.   GROUNDS FOR INTERVENTION

### A.  Movants are Entitled to Intervene as of Right

Movants meet all requirements for intervention as of right. F.R.C.P. 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who:

1.  is given an unconditional right to intervene by a federal statute; or

2.  claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, four requirements must be met for intervention as of right: (1) the applicant's substantial interest in the case; (2) impairment of the applicant's ability to protect that interest in the absence of intervention; (3) inadequate representation of that interest by parties already before the court; and (4) timeliness of the application to intervene. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

The Sixth Circuit has adopted a liberal approach in favoring the right of intervention.  In *Miller*, *supra*, the Court stated:

> This Circuit has opted for a rather expansive notion of the interest sufficient to invoke intervention as of right.  See *Purnell*, 925 F.2d at 948; *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to be construed liberally.").  We have, for example, noted that an intervenor need not have the same standing necessary to initiate a lawsuit, *Purnell*, 925 F.2d at 948, and cited with approval decisions of other courts "reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest."  *Id., cf.  Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994).

1.  **Movants have an interest relating to the property or transaction that is the subject of the action.**

Movant DKH Properties, Inc. is one of the owners of 121 West Main Street, the property immediately adjacent to the buildings which Owner seeks to demolish.  Movant, which purchased the property in 2005, is currently undertaking rehabilitation of its historic building for commercial usage and has expended substantial time and expense on adaptive reuse of its building.  Doogarsingh Affidavit, Exhibit 6.  Demolition of Owner's adjacent buildings not only has the potential to impact the value of Movant's property, but also to result in actual physical harm to Movant's building depending on how the demolition is undertaken.  Doogarsingh Affidavit, Exhibit 6.  Movant DKH Properties has a tangible and significant interest in ensuring that any determinations made by the City or private property owners with respect to demolition of adjacent buildings are legally valid and consistent with the public interest, including the interests of other property owners on the 100 block of West Main Street.

The other Movants are nonprofit organizations whose primary missions encompass historic preservation, environmental stewardship, protection and revitalization of neighborhoods and the local community, and transparency and public participation in local government.  See Affidavits of  Marianne Zickuhr, Jim Segrest, Martina Kunnecke, and Steve Wiser attached as Exhibits 2, 3, 4, and 5.   With this litigation centered on Owner's assertions of its purported right to demolish more than a half-block of historically, architecturally, and culturally significant buildings in a highly visible downtown location, the

subject matter of this lawsuit falls squarely within the core interests of Movants.  Additionally, Movants have a strong interest in ensuring strict compliance with the Landmarks Ordinance which provides important restrictions on destruction of historic properties and protections for the neighborhoods in which they are located.  Indeed, in this instance, Movants expended substantial time and resources in pursuing local landmark status for the specific buildings which are the subject of this litigation.  With Owner alleging that the existence of an imminent danger allows it to proceed with demolition, the applicability of the exemptions under the Landmarks Ordinance is a central issue in this litigation.  Movants' interest in the litigation is heightened by the City's decision to enter into an interim resolution in which the City reversed its previous determination that the buildings do not pose an imminent hazard, without conducting any additional structural analyses or obtaining input from the Landmarks Commission or the general public.  Likewise, the City's decision to enter into a resolution that potentially provides $450,000 in funding to a property owner aggressively pursuing demolition of designated local landmarks directly affects Movants' interests in promoting transparency and public participation in local government and sound public policy with respect to historic preservation.

     As described above, Movants have a tangible and significant interest in the subject matter of this action.  In C*enter for Biological Diversity v. Rural Utilities Services,* 2008 WL 4186891 (E.D. Ky. 2008), Judge Hood held that a rural electric co-operative had an interest sufficient to justify intervention as a defendant in a suit by a party contesting a determination of a federal agency, much as Movants in the present case seek to intervene as defendants in a suit by a party contesting a determination of a local agency.  In *Kentucky Heartwood, Inc. v. Worthington,* 20 F. Supp. 2d 1076 (E.D. Ky. 1998), Judge Forrester held that an association representing the timber industry was entitled to intervene in a suit filed against the United States Forest Service by groups interested in the preservation of Daniel Boone National Forest.  Just as the timber industry association had an interest in proper management of a national forest, the non-profit organizations that seek to intervene in this case have an interest in proper administration of requirements applicable to demolition of historic buildings.

The relevance of Movants' interests to the pending litigation is particularly evident due to the fact that Movants participated in the local government proceedings that go to the heart of this action and advocated the very determinations that owner seeks to challenge.  In *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997), the Michigan Chamber of Commerce was allowed to intervene in a suit by labor unions challenging the extension of state campaign finance restrictions to labor unions.  The court found that the Chamber of Commerce had a substantial legal interest by virtue of its role in the political process that resulted in the adoption of the contested amendments.  *Id*. at 1247.  Similarly, in *Citizens for Legislative Choice v. Miller*, No. 97-CV-73777-DT (E.D. Mich. Oct. 15, 1997), cited in *Grutter v. Bollinger,* 188 F.3d 394, 398 (6th Cir. 1999), a citizens group was allowed to intervene in an action challenging the constitutionality of a term limits law for which it had lobbied.  Just as the Michigan Chamber of Commerce lobbied for restrictions on labor unions and the citizen group lobbied for term limits, both of which were subsequently challenged, Movants advocated designation of Owner's buildings as local landmarks and sought restrictions on demolition of those buildings, which is the subject of the current challenge before this court.  Movants' participation in the local landmarks proceedings underscores the significance of their interests.  Even if it could be said that the question raised is a close one, "close cases should be resolved in favor of recognizing an interest under Rule 24(a)."  *Miller*, 103 F.3d at 1247.  In this instance, Movants' interests clearly rise to the level sufficient for intervention under Rule 24.

**2.   Movants are so situated that the disposition of the instant action, in their absence, may impair or impede their ability to protect their interest.**

Unless Movants are allowed to intervene, the disposition of this action will, as a practical matter, impair or impede their ability to protect their interests.  The City has entered a resolution that provides for demolition of the historic Whiskey Row buildings.  The agreement provides that Owner and the City will explore the feasibility of preserving the facades over a 90-day period, but if they are unable to reach an agreement Owner is authorized to proceed with total demolition of the buildings and construction of a parking lot.  Depending entirely on the discretion of Owner – a party which to date has aggressively

pursued demolition of the buildings to the exclusion of all other options – more than half of the 100 block of West Main may be demolished and replaced with a surface parking lot for a period of up to five years, but in all likelihood for a much longer period.  Unless Movants are allowed to intervene, their specific interest in protecting the historic buildings on Whiskey Row from demolition or other adverse impacts will be entirely defeated.   If this demolition is allowed, Movants believe these seven buildings will be the first individually landmarked buildings to be demolished since the inception of the Landmarks Ordinance in 1973.  Zickuhr Affidavit, Exhibit 2.  Looking beyond the immediate impairment of Movants' interests represented by the loss, in part or whole, of the Whiskey Row buildings, the negotiated resolution in this case establishes a precedent that is fundamentally at odds with Movants' interests.  It may well encourage the owners of "landmarked" buildings to circumvent the process under the Landmarks Ordinance and obtain authorization for demolition through litigation, rather than a demonstration of economic hardship to the Landmarks Commission.   It is well recognized that the precedential effect of an adverse case resolution is sufficient, in itself, to demonstrate impairment of interests necessary for intervention.  In the court's words in *Ceres v. Cooper*, 957 F.2d 1199 (5th Cir. 1992), "… because of the precedential effect of the district court's decision, an adverse resolution of the action would impair their ability to protect their interest."   In the present case, the combination of the immediate impact of the loss of the Whiskey Row buildings coupled with the potential precedent for demolition of "landmarked" buildings in the future provides ample grounds for determining that Movants interests may be impaired within the meaning of Rule 24.

   **3.   The interests of Movants are not adequately represented.**

   The Supreme Court has held that the burden to establish that parties already present do not adequately represent an intervenor's interest is minimal.  *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed2d 686 (1972).   The Sixth Circuit has declined to adopt a higher standard for inadequacy when a governmental entity is involved.  *Grutter v. Bollinger,* 188 F.3d 394, 400 (6th Cir. 1999).  Movants are one of the private owners of an adjacent historic building currently being

rehabilitated and non-profit organizations with interests that largely focus on historic preservation and adaptive reuse of historic buildings in this case.  With far more generalized interests, the City cannot be expected to adequately represent Movants' interests.   In *Kleissler v. United States Forest Service*, 157 F.3d 964, 973-974 (3rd Cir. 1998), the court, in granting intervention, noted that the government's "numerous complex and conflicting interests" may cause an intervenor's more narrow interest to "become lost in the thicket of sometimes inconsistent governmental policies." In allowing a timber industry group to intervene in a lawsuit against the Department of Agriculture relating to management of national forests, the Court in *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994), stated as follows:

> The government must represent the broad public interest, not just the economic concerns of the timber industry.  Given the minimal burden on the movants to satisfy this requirement, we conclude that the government's representation of the intervenors' interest is inadequate.

The same rationale supports the conclusion that the City's more generalized interests may trump Movants more focused interests in the present case and result in inadequate representation of Movants' interests.

In *Center for Biological Diversity*, *supra*, the U.S. District Court for the Eastern District of Kentucky followed the same logic in allowing a rural electric co-operative to intervene as a defendant to defend claims against the Rural Utilities Service (a federal agency).  Judge Hood held:

>  "Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden is minimal because it is sufficient that the movant prove that representation *may* be inadequate."  *Miller*, 103 F.2d at 1247 (emphasis added).  To satisfy this element, "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments."  *Miller*, 103 F.3d at 1247 (citing *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995).  EKPC's interests may not be adequately represented by RUS.  While RUS's obligation is to uphold administration of the USDA Rural Development program, EKPC's obligation is to provide electrical service to residents of central and eastern Kentucky.  RUS may not adequately protect EKPC's interests and EKPC is entitled to intervene in this action.

2008 WL 4186891 at *3.

In the present case, the facts are even more compelling.  In entering the agreement with Owner, the City has chosen to abandon arguments that support its previous determination that demolition of the buildings is unwarranted due to the absence of any imminent danger.  If the Court allows Movants to intervene, Movants will strenuously assert those arguments.  Going to the substance of the agreement negotiated by the City, the agreed upon resolution allows loss of the Whiskey Row buildings, in whole or in part, and establishes a precedent which is fundamentally inconsistent with Movants' interests.  While Movants have a minimal burden to establish that representation of their interests <u>may</u> be inadequate, the City's actions in this case without question establish that its representation of Movants' interests <u>is</u> inadequate.

**4.    Movants have filed their motion to intervene in a timely manner.**

The Agreed Judgment negotiated by the City is the action which directly linked Movants' interests to the subject litigation, raised the prospect of impairment of Movants' ability to protect their interests, and established that Movants' interests are not adequately represented by the existing parties.  During the entire pendency of the litigation, Movants were assured by representatives of the City, under both the prior and current City Administrations, that the City was aggressively defending its original determination not to issue emergency demolition orders for the buildings.  The City did not give Movants even a hint that the City was considering any change in its position prior to announcement of the Agreed Judgment.  The Agreed Judgment expressly provides that it is not a "final" or "appealable" resolution and that the case shall remain pending before the court until completion of demolition of the buildings and construction of the parking lot sometime after expiration of the 90-day negotiating period.   The Agreed Judgment makes it abundantly clear that the parties have yet to agree on the terms of a final resolution of this case.

Movants offer to tailor their intervention narrowly to protect their interests, while avoiding any substantial disruption to the pending proceedings.  Movants seek intervention for the limited purpose of: (1) ensuring that any action by the City and Owner will not harm the interests of the owner of the property

14

located at 121 West Main Street;  (2) defending the City's original  determination not to issue emergency demolition orders for Owner's buildings on the grounds that the City had a rational basis for determining that the buildings do not pose an imminent danger to public safety; (3) arranging for an expert structural engineer to inspect Owner's buildings, including facades, and render an opinion on their current structural condition; and (4) establishing through an evidentiary hearing that the Agreed Judgment entered by the parties violates applicable law and fails to serve the public interest because the buildings do not pose an imminent danger to public safety and therefore fall within the Landmarks Ordinance prohibition on demolition of designated local landmarks without a finding of economic hardship by the Landmarks Commission.

In determining whether a motion to intervene is timely, a court must consider the following factors:

1.   the point to which the suit has progressed;

2.   the purpose for which intervention is sought;

3.   the length of time preceding the application during which the proposed intervener knew or reasonably should have known of his interest in the case;

4.   the prejudice to the original parties due to the proposed intervener's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and

5.   the existence of unusual circumstances militating against or in favor of intervention.

*Velsicol Chemical Corp. v. Enenco, Inc.*, 9 F.3d 524, 531 (6th Cir. 1993); *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir. 1984).

Timeliness is to be judged in consideration of all of the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties to the case.

*United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).

Even entry of a judgment or settlement in a pending case does not establish that a motion to intervene is untimely.   In *Smoke v. Norton*, 252 F.3d 468 (D.C. Circuit 2001), the Court of Appeals reversed the lower court's denial of an Indian Tribe's motion to intervene filed after entry of a summary judgment against the Department of Interior.  The Court found that "[t]he appellants had no occasion to intervene in order to protect their interests until after the judgment was entered… The Government's representation of appellants' interests became potentially inadequate only when it equivocated about whether it would appeal the adverse ruling of the district court." 252 F.3d at 469, 471.  Similarly, in the present case, intervention became necessary to protect Movants' interests only after the City negotiated the Agreed Judgment.  In *Linton v. Comm'r of Health & Environment*, 973 F.2d 1311, 1317-18 (6th Cir. 1992), the Court ruled that post-judgment intervention is allowable depending on the circumstances of the case, but that a motion to intervene made within the timeframe for an appeal weighs heavily in favor of intervention.  Because the Agreed Judgment in this case is neither final nor appealable, Movants have sought intervention in this case well before the expiration of any appeal rights.  In *Santander v. Lopez*, 2010 WL 1172531 (Tenn. Ct. App.),  a Tennessee appellate court reversed a lower court's denial of an insurance company's motion to intervene to protect its subrogation rights after the parties had reached a "settlement in principle," but before the court had entered any final settlement.  In the present case, while the court has entered the Agreed Judgment tendered by the parties, it is a not a final disposition of the case.  The ultimate resolution of this case will largely depend on the continuing negotiations between the City and Owner, so the entry of the Agreed Judgment does not establish that Movants' intervention is untimely.

In the present case, Movants first learned of the Agreed Judgment when announced by the City on January 31, 2011.  Zickuhr Affidavit, Exhibit 2.  Movants have filed their motion to intervene within 35 days of the Agreed Judgment being entered by the Court on February 4, 2011.  Clearly, Movants applied for intervention promptly once they knew or reasonably should have known of their interest in this case.  Even with entry of the Agreed Judgment, the court has not entered a <u>final</u> judgment in this case.

16

The narrowly tailored intervention proposed by Movants will minimize any disruption of the proceedings and avoid prejudice to the original parties.

Moreover, special circumstances strongly warrant granting Movants' motion to intervene.  If any or all of the Whiskey Row buildings do not pose an imminent danger to public safety, the City, in agreeing to demolition of the buildings without the requisite finding of economic hardship by the Landmarks Commission, has exceeded its authority, violated applicable Louisville Metro Ordinances, and contravened its original validly issued determination.   This *ultra vires* act would result in the tragic loss of more than a half- block of buildings of historic, architectural, and cultural importance in a location near the new YUM! Center and Waterfront Park.   While the prospect of Owner successfully developing a new project to replace the demolished buildings is uncertain, replacement of these historic buildings with a parking lot for a period of five years or more is a virtual certainty under the Agreed Judgment.  The public interest strongly favors intervention by Movants in order to facilitate a vigorous evidentiary hearing to determine whether demolition of the Whiskey Row buildings is permissible.

## B.  In the alternative, Movants are Entitled to Permissive Intervention

As an alternative to intervention of right, Movants are entitled to permissive intervention under F.R.C.P. 24(b).  Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who:

1.   is given a conditional right to intervene by a federal statute; or

2.   has a claim or defense that shares with the main action a common question of law or fact.

The decision whether to allow a party to permissively intervene in an action lies within the discretion of the court.  *Wright & Miller*, 7C Federal Practice and Procedure, Section 1910 (3rd Edition).  The common question involved in the present case is whether the Whiskey Row buildings are in a condition that poses an imminent hazard to public safety and thus allows their demolition absent a finding of economic hardship by the Landmarks Commission.  As described

in more detail above with respect to intervention of right, none of the relevant factors militate against permissive intervention.

## V. CONCLUSION

Movants are entitled to intervene as of right under Rule 24(a) or, in the alternative, permissively under Rule 24(b).  Intervention by Movants is critical in order to ensure that this case is resolved in a fair and reasonable manner which protects the interests of the public and meets all applicable requirements of law.

Respectfully submitted,


s/Stephen T. Porter_____
Stephen T. Porter
2406 Tucker Station Road
Louisville, Kentucky 40299-4529
(502)297-9991
stpinlou@aol.com


COUNSEL FOR MOVANTS




CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2011, I electronically filed the foregoing with the Clerk of the United States District Court for the Western District of Kentucky through the CM/ECF system, which will send a Notice of Electronic Filing to the following:

18

Glenn A. Cohen, gcohen@derbycitylaw.com

Joseph H. Cohen, jcohen@derbycitylaw.com

Paul Joseph Hershberg, hershberg@derbycitylaw.com

Robyn R. Smith, rsmith@derbycitylaw.com

Johnathan Baker, johnathan.baker@louisvilleky.gov

N. Scott Lilly, scott.lilly@louisvilleky.gov

Theresa Zawacki Senninger, theresa.senninger@louisvilleky.gov


I further certify that on the same day I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

Gordon C. Rose

Weber & Rose, P.S.C.

471 West Main Street, Suite 400

Louisville, Kentucky 40202


s/Stephen T. Porter

Counsel for Movants