UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-539-H

THE IRON QUARTER, LLC                                                    PLAINTIFF

V.

JIM MIMS, et al.                                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

While a continuing public controversy simmers over the fate of seven West Main Street structures in an area known as Whiskey Row (the "Property"), several interested entities have sought a more direct role by way of intervention in this lawsuit. One entity, DKH Properties, Inc., is one of the owners of the building immediately adjacent to the Property. Others, the Louisville Historical League, Inc., Neighborhood Planning and Preservation, Inc., Open Louisville, Inc., and Preservation Louisville, Inc. are "non-profit organizations whose primary missions encompass historic preservation, environmental stewardship, protection and revitalization of neighborhoods and the local community, and transparency and public participation in local government." (Intervenors' Mem. Supp. Mot. Intervene Defs. 9.)

The Court will address their motion and then the overall status of the case.

I.

The current owners of the Property, Iron Quarter LLC, originally filed suit in July of 2010 in state court seeking a demolition order for the Property for fear it was unsafe and a pubic danger. Iron Quarter believed that Defendants (Jim mims, in his official capacity as Director of Codes and Regulations, and Louisville-Jefferson County Metro Government) had wrongfully

denied a demolition order in violation of city ordinances and its equal protection and due process rights. Shortly before an expedited hearing in state court, Defendants removed to federal court based upon Iron Quarters' assertion of federal constitutional claims.

This Court explored the basis of its jurisdiction in this case, including whether Iron Quarter had exhausted administrative remedies. In the end, both parties sought the jurisdiction of this Court. The Court carefully summarized the factual context and the then pending legal issues in its Memorandum Opinion dated January 12, 2011. Thereafter, the Court set a hearing on the merits of Iron Quarter's claims. On the eve of that hearing, the parties reached an agreement which purports to govern their future actions (the "Agreement"), set forth in the form of an Agreed Judgment, which this Court entered on February 8, 2011. The Movants apparently disagree with Defendants' decision to settle the dispute and with the manner of settlement.

## II.

To intervene under Rule 24(a), Federal Rules of Civil Procedure, Movants must establish that "(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest." *Coal. to Defend Affirmative Action v. Granholm,* 501 F.3d 775, 779 (6th Cir. 2007).

Permissive intervention under Rule 24(b) is appropriate when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion under Rule 24(b), a district court should consider the timeliness of the motion as well as if intervention would result in prejudice to the parties. Fed.

R. Civ. P. 24(b)(3) and *Mich. State AFL-CIO v. Miller,* 103 F.3d 1240, 1248 (6th Cir. 1997). "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Granholm,* 501 F.3d at 779 (quoting *Purnell v. City of Akron,* 925 F.2d 941, 950 (6th Cir. 1991)). The Court will consider these factors.

A.

Timeliness is an important consideration. The Sixth Circuit has articulated several criteria to evaluate it: (1) the progress of the suit; (2) the purpose for intervention; (3) whether the movants should have known to proceed sooner; "(4) the prejudice to the original parties due to the proposed intervenor's failure . . . to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention. *United States v. Tenn.,* 260 F.3d 587, 592 (6th Cir. 2001).

Movants seek intervention for numerous reasons: protecting DKH Properties' property interests, defending Louisville Metro's original decision to deny an emergency demolition order, arranging for an engineer to determine the condition of the structures, and "establishing through an evidentiary hearing that the Agreed Judgment entered by the parties violates applicable law and fails to serve the public interest." Intervenors' Mem. Supp. Mot. Intervene Defs. 2. Though the Court will not determine at this time whether Movants can obtain any particular relief requested, the intervention is sufficiently timely to address these issues.

True, the Movants "knew of the litigation . . . at all stages and it also knew that its members had an interest in the outcome of the litigation." *Tenn.,* 260 F.3d at 593. In a similar scenario, the Sixth Circuit upheld two different district court's determination that intervention was not timely because the proposed intervenors had waited too long to intervene; "[a]n entity

that is aware that its interests may be impaired by the outcome of litigation is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene." *Id.* at 593 - 94. However, prior to the Agreement, the intervening parties believed that Metro Louisville was taking their side on the issues in the litigation. Moreover, the case is not dismissed nor has the time for any appeal begun. *See Linton v. Comm'r of Health and Env't, State of Tenn.,* 973 F.2d 1311, 1318 (6th Cir. 1992).

The parties to the original action claim prejudice through potential delay in demolition, the introduction of new concerns, and the renewed focus on factual, rather than legal, issues. However, this Court has shown some ability to decide any issues presented to it in a timely fashion. In addition, Movants' arguments generally do not go "beyond the scope of the suit's initial focus." *Tenn.,* 260 F.3d at 594. Therefore, the parties would have no need to address new legal arguments or discover new facts.[1] At this point, the Court does not know what relief the Movants may seek or whether this Court is even the proper place to seek it. However, the Movants' voice and views could be helpful in reaching any decisions. In this Court's view, intervention guarantees a seat at the table, not the right to play a particular role or to receive a particular remedy.

The Agreement contemplates that Metro Louisville will issue an emergency demolition order ("EDO") which will permit Iron Quarter to demolish the Property. No court has directly addressed the statutory scheme at issue, been exposed to the complete evidence on the condition of the buildings, or considered the constitutional issues. Yet, DKH Properties, Inc. will be

---

[1]The only foreseeable new arguments relate to DKH Properties' property interests and the validity of the Agreed Judgment. Should any new arguments arise that would work prejudice to the parties, the Court will again, at that point, reconsider its jurisdiction and any conditions that should be placed on intervening parties in this case.

directly affected by the outcome of the underlying litigation. *See Id.* at 594 - 95. These factors suggest that, on balance, intervention is timely.

B.

For intervention of right, the proposed intervenor must have a substantial legal interest in the main action while a permissive intervenor must only have a question of law or fact in common with the main action. DKH Properties, Inc. has the most obvious substantial legal interest in that it partly owns adjacent property which could incur physical or economic harm from events at Iron Quarter properties. Its interests are direct and substantial.

As to the remaining Movants, "[w]here. . . an organization has only a general ideological interest in the lawsuit - like seeing that the government zealously enforces some piece of legislation that the organization supports - and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial." *Granholm,* 501 F.3d at 782. Their interests are more indirect.

Each of the Movants may have other avenues of relief available to them. In *United States v. Tennessee,* the Sixth Circuit found no substantial legal interest in part because the proposed intervenors could protect its interests in separate contract negotiations, suits to enforce contract rights, and lobbying. 260 F.3d at 595-96. While it appears the Movants (besides DKH Properties, Inc.) do not have a substantial legal interest, they do have an interest in questions of law or fact in common with the main action. The Court will allow the non-profit Movants to intervene permissively and may, at a later time, place conditions on their participation. *See, e.g., Brown v. S. C. State Forestry Comm'n,* 226 F.Supp. 646, 650 (D.S.C. 1963).

C.

5

Because this Court has concluded that only Movant DKH Properties, Inc. has a substantial legal interest, the last two factors for intervention of right will be examined solely with respect to this particular Movant. The burden for Movant under both of these factors is minimal. *Grutter v. Bollinger,* 188 F.3d 394, 399 (6th Cir. 1999) and *Linton,* 973 F.2d at 1319. DKH Properties, Inc. is in the best position to evaluate the economic and physical effect on its interests of demolition of the Property with or without preservation of the facades as well as the presence of a parking lot in place of the Property; without its voice in this litigation, its interests may be impaired. Likewise, given that DKH Properties' interests are unique to it and not held by either party to this litigation, "representation [of its interests by a party] may be inadequate." *Linton,* 973 F.2d at 1319.

III.

The Court has taken this opportunity to review the status of this case and its jurisdictional basis. Different procedural contexts can affect both future jurisdiction and substantive issues. Foreseeing these issues, the Court now attempts to place the case in a clearer procedural context.

In its January 12, 2011, Memorandum Opinion, the Court consented to the parties' request that it exercise its supplemental jurisdiction to decide a purely state law issue concerning the proper application of Louisville-Jefferson County Metro Government Code of Ordinances ("LMCO") on demolition and wrecking permits. Iron Quarter and Defendants vigorously disputed the procedural and substantive application of the relevant LMCO's to the circumstances. What happened next is best clarified in light of subsequent events. Iron Quarter and Defendants reached an agreement.

Upon their request, the Court signed an Agreed Judgment which described the

agreement. Iron Quarter and Defendants have a perfect right to resolve their legal differences by agreement and to enforce it so far as the law allows.[2] However, the filing of such an agreement should not be taken to suggest that the Court has determined or prejudged all of the actions contemplated in the Agreement as having the force of law. The Court has not considered whether the public acts which Defendants have promised are acts which it may properly perform under all circumstances.

Bear in mind that immediately prior to the settlement this Court was to consider whether Defendants had abused its discretion in wrongly denying Iron Quarter's request for an EDO. The issue looming on the horizon is whether Defendants would abuse their discretion or violate some other rule by issuing the EDO as promised in the Agreement. These questions present different procedural issues and substance contexts. The exercise of executive discretion is such that Defendants could have the power to take seemingly contradictory actions in similar situations. But neither question has been decided.

Finally, the Court is cognizant that its current jurisdiction rests upon the federal issues which Iron Quarter asserted in its original complaint. From this origin the Court has maintained supplemental jurisdiction over several purely state law issues. While the Court recognizes disagreement regarding the sufficiency of supplemental jurisdiction for intervention, this Court understands 28 U.S.C. § 1367(a) to allow supplemental jurisdiction over an intervener's claims in federal question cases. Whether the Court continues to exercise its supplemental jurisdiction discretion is another matter which only continuing circumstances and procedural issues will

---

[2] The usual reason for entering such an order or judgment is to facilitate its later enforcement between the parties. That criteria seemed applicable here.

clarify.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion to intervene is SUSTAINED and DKH Properties, Inc. will be permitted to intervene as of right and the remaining Movants will be permitted to intervene permissively.

cc: Counsel of Record